W.A.W. Van Limburg STIRUM; Dr. Herbert A. Zaccheo; James M. Van Metre; Nancy N. Van Metre; Lauren L. Van Metre; William H. Nichols, Jr.; Peter C. Canellos; The P.C.C. Holdings Co., Inc.; Herbert W. Owen; William L. Kermond; Courtney Ellison Price; Judith Ellison Price; Joanne M. Russo; Swenson Ranch Program No. 1; Swenson Ranch Program No. 3; Swenson Ranch Program No. 3–A; Swenson Ranch Program No. 4; Swenson Ranch Program No. 4–A; Swenson Ranch Program No. 5; Swenson Ranch Program No. 6; Whalen (Silver Bow) Program No. 7; Whalen (Silver Bow) Program

No. 8; Whalen (Silver Bow) Program No. 9; Whalen (Silver Bow) Program No. 10; Whalen (Silver Bow) Program No. 11; Whalen (Silver Bow) Program No. 12; Whalen (Silver Bow) Program No. 14; Whalen (Silver Bow) Program No. 15; Whalen (Silver Bow) Program No. 16, Plaintiffs,

v.

Raymond J. WHALEN; Silver Bow Resources & Chemical Corp.; Whalen Drilling and Mining Corp.; Bartlett, Pontiff, Stewart Rhodes & Judge, P.C.; Paul E. Pontiff; Jenkins & Powers, P.C.; Preston L. Jenkins, Jr.; Taxco, Inc.; Silver Bow Leasing, Inc.; Exchange Place Corp., Defendants.

No. 90–CV–1279.

United States District Court, N.D. New York.

Jan. 26, 1993.

Hodgson, Russ, Andrews, Woods & Goodyear (Robert J. Lane, Jr., of counsel), Buffalo, NY, for plaintiffs.

Raymond J. Whalen, Warrensburgh, NY, pro se, and for defendants Silver Bow Resources & Chemical Corp., Whalen Drilling and Mining Corp., Taxco, Inc., Silver Bow Leasing, Inc., and Exchange Place Corp.

Donohue, Sabo, Varley & Armstrong, P.C. (Alvin O. Sabo, Christine M. D'Addio, of counsel), Albany, NY, for defendants Bartlett, Pontiff, Stewart Rhodes & Judge, P.C. and Paul Pontiff.

McPhillips, Fitzgerald & Meyer (Joseph R. Brennan, of counsel), Glens Falls, NY, for defendants Jenkins & Powers, P.C. and Preston Jenkins, Jr.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### I. *Introduction*

Before the court are cross-motions involving an unusual discovery controversy. During the time period relevant to this lawsuit, defendants Bartlett, Pontiff, Stewart, Rhodes & Judge, P.C. and Paul Pontiff, Esq. (collectively, "the attorney defendants" or "Bartlett, Pontiff") served as attorneys for, among others, co-defendants Raymond J. Whalen, Silver Bow Resources & Chemical Corporation, and Whalen Drilling and Mining Corporation (collectively, "the Whalen defendants"). Plaintiffs' second amended complaint includes numerous allegations of wrongdoing by Bartlett, Pontiff undertaken during the existence of their attorney-client relationship with the Whalen defendants.

Plaintiffs served detailed discovery requests upon all defendants and, as a result of this court's orders dated November 1, 1991 and November 19, 1991, Documents ("Docs.") 131 and 132, the Whalen defendants produced volumes of materials without asserting any protective privilege.[1] Af-

---

**1.** The Whalen defendants had been advised of their right to assert "various privileges recognized under the law, such as attorney-client privilege or confidential business information,"

ter negotiating unsuccessfully with plaintiffs regarding the discovery requests served upon them, Bartlett, Pontiff filed the instant motion for an order authorizing them to disclose documents and testify about their role in all aspects of the events which gave rise to this lawsuit, notwithstanding the attorney-client privilege which ordinarily would protect from disclosure any confidential communications between attorney and client. The attorney defendants seek this order as part of their effort to defend themselves against plaintiffs' allegations of wrongdoing, consistent with DR 4–101(C)(2)[2] and (4) of the Model Code of Professional Responsibility. Alternatively, the attorney defendants move for a protective order pursuant to Fed.R.Civ.P. 26(c) to protect from disclosure all documents in their possession on the ground that such documents are privileged communications between attorney and client.

Plaintiffs cross-move pursuant to Fed.R.Civ.P. 37(a) for an order compelling the production of all documents in the possession or control of Bartlett, Pontiff which are responsive to plaintiffs' discovery requests dated June 26, 1991. Arguing that Bartlett, Pontiff served as counsel for Silver Bow Partnerships as well as the various Whalen defendants, thus making the individual Partnership Programs and limited partners co-holders of the attorney-client privilege, plaintiffs contend that the privilege cannot now be used to withhold documents from them. Moreover, any communications with Silver Bow Resources & Chemical Corporation in its fiduciary capacity as general managing partner of Silver Bow Partnerships cannot be withheld from plaintiffs, as the communications were made on the Partnerships' behalf. Plaintiffs also argue that, because the communications were allegedly part of the ongoing perpetration of fraud by Silver Bow Resources & Chemical Corporation, such communications are excluded from the protection of the attorney-client privilege. Finally, plaintiffs contend that since the Whalen defendants purport to have produced every piece of paper in their possession regarding the issues in this case, they waived any attorney-client privilege protection that would apply and the attorney defendants therefore have no ground upon which to assert the privilege. For all of these reasons, plaintiffs move to compel discovery. Plaintiffs seek an award of costs and attorney's fees under Rule 37(a)(4) in the event that their motion to compel is granted. Plaintiffs also move for Rule 11 sanctions against counsel for defendants Bartlett, Pontiff and Paul Pontiff, on the ground that the blanket assertion of attorney-client privilege protection in response to the entirety of plaintiffs' discovery requests is baseless and objectively unreasonable.

The court heard oral argument on these motions on May 8, 1992 in Syracuse, New York. Thereafter, counsel for plaintiffs withdrew the cross-motion for an award of costs and attorney's fees as well as the cross-motion for Rule 11 sanctions. *See* Letter dated May 12, 1992, Doc. 155. For the reasons stated below, the court grants in part plaintiffs' remaining cross-motion to compel discovery and directs Bartlett, Pontiff to respond to plaintiffs' outstanding discovery requests. The court also grants the motion by Bartlett, Pontiff for an order authorizing them, in their effort to defend themselves against plaintiffs' allegations of wrongdoing, to all disclose documents and testify about their role in all aspects of the events which gave rise to this lawsuit.

## II. *Discussion*

The Supreme Court has repeatedly recognized the attorney-client privilege as a principle of common law to be applied "in the light of reason and experience" pursuant to Fed.R.Evid. 501. *E.g., United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989). The central purpose behind the attorney-client privilege, as articulated by the Court, is "to

---

in the court's decision delivered from the bench on October 28, 1991. *See* Transcript of Decision, Document 133, at 22.

**2.** The attorney defendants incorrectly cite DR 4–101(C)(1) in their motion papers, as the provision quoted in their memorandum of law, Doc. 144 at 3–4, and the provision which the court finds to be relevant here, is DR 4–101(C)(2).

encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). By protecting such confidential communications from disclosure, the privilege facilitates attorneys being fully informed by their clients of all pertinent information, upon which the attorneys are better able to render sound legal advice or advocacy. *See id.* at 389–91, 101 S.Ct. at 682–83; *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). The Supreme Court cautions, however, that "[s]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). For example, communications made in furtherance of the commission of a crime or fraud are excepted from the attorney-client privilege's seal of secrecy whether or not the attorney was aware of the client's improper purpose, because protection of such communications does not promote observance of law and administration of justice. *See Zolin*, 491 U.S. at 563, 109 S.Ct. at 2626; *In re Grand Jury Proceedings*, 680 F.2d 1026, 1028 (5th Cir.1982) (quoting *United States v. Hodge & Zweig*, 548 F.2d 1347, 1354–55 (9th Cir.1977).

 In cases involving issues of federal law, courts in the Second Circuit generally have adopted the following detailed test to analyze disputes involving the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication related to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Falzone*, 766 F.Supp. 1265, 1271 (W.D.N.Y.1991) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982); *Thomas v. F.F. Financial, Inc.*, 128 F.R.D. 192, 192–93 (S.D.N.Y.1989) (quoting *Drimmer v. Appleton*, 628 F.Supp. 1249, 1251 (S.D.N.Y.1986)); *In re White*, 42 B.R. 494, 499 (Bankr.E.D.N.Y. 1984). A waiver may be effected through voluntary disclosure by the client, through the client's express consent to disclose, or through implication gleaned from the client's actions. *In re von Bulow*, 828 F.2d 94, 101 (2d Cir.1987).

In the case at bar, there is no dispute regarding the first two prongs of the test. Everyone agrees that the Whalen defendants were clients of Bartlett, Pontiff and that communications were made between them pursuant to the attorney-cleint relationship. It is the third prong of the test where the parties' positions diverge. Bartlett, Pontiff asserted the attorney-client privilege to protect from disclosure nearly all of the documents requested by plaintiffs in the June 26, 1991 production request. *See* Response to Plaintiffs' Rule 34 Demand, dated January 28, 1992, attached to Doc. 143 as part of Exhibit ("Exh.") C. For example, in response to item 2 of plaintiffs' document request seeking all correspondence and other documents between Bartlett, Pontiff and investors in the Silver Bow Partnerships, the attorney defendants responded in part, "[i]n addition, the Demand seeks information which is protected by the attorney-client privilege." *Id.* While plaintiffs present the hotly contested argument that they are co-holders of the attorney-client privilege and that the privilege therefore cannot be used to withhold the requested documents from them, the court finds a more concrete and compendious method of ruling on a large number of plaintiffs' discovery requests.

■ As set forth above, the attorney-client privilege protects only those communications which occur between attorney and *client* in a *confidential* manner. *E.g., Falzone*, 766 F.Supp. at 1271. The privilege cannot be used to prevent disclosure of communications with third parties, or to prevent disclosure of communications that were conveyed between attorney and client in the presence of third parties or later released to third parties. *Nelson v. Greenspoon*, 103 F.R.D. 118, 123–24 (S.D.N.Y. 1984). Because item 2 of plaintiffs' document request does not seek communications between attorney and client, but rather seeks correspondence and other documents between Bartlett, Pontiff and investors in the Silver Bow Partnerships, the attorney-client privilege clearly does not apply. Similarly, the attorney-client privilege does not apply to items 3, 4, 5, 6, 7, 15, 21, 24, 25, 26, 27, 31, 32, 35, 36, and parts of items 1, 8, 9, 11, 12, 14, 16, 17, 18, 19, 22, 23, 28, 29, 30, 33, and 34 of plaintiffs' document production request, because such items seek communications with third parties or conveyed to third parties. *See* Exh. C attached to Doc. 143. Thus, the court finds that Bartlett, Pontiff improperly asserted the attorney-client privilege in connection with these enumerated items, and hereby directs Bartlett, Pontiff to produce all documents responsive to these items subject, of course, to validly raised objections on grounds other than the attorney-client privilege.

■ As for items 10, 13, 20, and the remaining portions of items 1, 8, 9, 11, 12, 14, 16, 17, 18, 19, 22, 23, 28, 29, 30, 33, and 34 of plaintiffs' document production request, the court will analyze the cross-motions in the context of the crime-fraud exception to the privilege. That exception excludes from the protection of the attorney-client privilege "communications made for the purpose of getting advice for the commission of a fraud or crime." *Zolin*, 491 U.S. at 563, 109 S.Ct. at 2626 (internal quotation omitted). The Supreme Court long ago ruled that "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). In other words, the Court explained, the attorney-client privilege "takes flight if the relation is abused." *Id.*

While no crime or fraud has yet been conclusively proven in the case at bar, allegations of such conduct are at the heart of the controversy. Many of the allegations contained in plaintiffs' second amended complaint refer to fraudulent conduct by the Whalen defendants, and there are also allegations that the attorney defendants provided legal services which assisted the Whalen defendants to perpetrate the alleged fraud. Notwithstanding these allegations, the protection afforded by the attorney-client privilege is not easily removed. Recognizing that the mere charge of fraud is insufficient to remove that protective shield, the *Clark* Court ruled that "[t]o drive the privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact." *Id.* (internal quotations omitted); *see also Quintel Corp., N.V. v. Citibank, N.A.*, 567 F.Supp. 1357, 1365 (S.D.N.Y.1983) ("exception to the privilege applies where a prima facie showing of fraud has been made by the party seeking disclosure"); *Roberts v. Heim*, 123 F.R.D. 614, 635 (N.D.Cal.1988) ("plaintiffs must first make a prima facie showing that the subject legal advice was obtained in furtherance of illegal or fraudulent activity").

The court is persuaded that sufficient evidence has been introduced during the course of this lawsuit to make a prima facie case of fraud against the Whalen defendants in connection with the formation and operation of Silver Bow Partnerships, thereby removing the attorney-client privilege protection from all documents confidentially conveyed between the Whalen defendants and Bartlett, Pontiff involving the formation and/or operation of Silver Bow Partnerships. In the record before the court are extensive documents and affidavits from individual plaintiffs as well as non-party individuals detailing the Whalen defendants' misconduct with regard to

Silver Bow Partnerships. The misconduct includes: fraudulent representations in the Private Placement Memoranda and Partnership Agreements regarding the use of subscription funds and oil production revenues, undercapitalization of several Partnership Programs accomplished through fraud, commingling of Partnership funds with Silver Bow Resources & Chemical Corporation's operating funds, expenditures from the commingled account designed to benefit Raymond Whalen and his affiliates personally, fraudulent conversion of oil production revenues and misrepresentation of the oil production revenue distribution schedule to the limited partners, tax fraud, and securities fraud. *E.g.*, Affidavit of W.A.W. Van Limburg Stirum, attached to Doc. 14; Affidavit of James M. Van Metre, Doc. 40; Affidavit of James C. Mote with exhibits, Doc. 17; Affidavit of Linda Candido (Henderson) with exhibits, Doc. 16; Affidavit of Linda (Candido) Henderson, Doc. 102; Partnership Agreements, Exhs. A–M attached to Doc. 112. Prior proceedings based on this record have resulted in the appointment of a receiver to manage Silver Bow Partnership affairs pending resolution of this lawsuit, and a preliminary injunction enjoining Silver Bow Resources & Chemical Corporation from receiving or using any proceeds from its various interests in the oil revenues of Silver Bow Partnerships. *See* Minute Entry recording Decision from the Bench on May 22, 1991, Doc. 74; Order dated May 31, 1991, Doc. 77, as amended by Order dated June 6, 1991, Doc. 79; Transcript of Decision from the Bench on October 28, 1991, Doc. 133; Order dated November 1, 1991, Doc. 131. The evidence of misconduct by the Whalen defendants which led to the appointment of a receiver and the granting of a preliminary injunction is equally persuasive here to establish a prima facie case of fraud against the Whalen defendants. The court concludes, on the record before it, that the prima facie evidence of fraud by the Whalen defendants in connection with the formation and operation of Silver Bow Partnerships is sufficient to remove the protective shield of the attorney-client privilege from all documents confidentially conveyed between the Whalen defendants and Bartlett, Pontiff involving the formation and/or operation of Silver Bow Partnerships. Therefore, the attorney defendants are directed to disclose to plaintiffs all communications responsive to items 10, 13, 20, and the remaining portions of items 1, 8, 9, 11, 12, 14, 16, 17, 18, 23, 28, 29, 30, 33, and 34 of plaintiffs' document production request.

There is one item which requests documents that may fall outside the scope of the court's ruling on the crime-fraud exception. Item 22 requests Bartlett, Pontiff's entire files "relating to legal work performed for [Silver Bow Resources & Chemical Corporation, Whalen Drilling and Mining Corporation], or the Silver Bow Partnerships." It is conceivable, and indeed likely, that some documents responsive to this request do not involve the formation or operation of Silver Bow Partnerships and thus do not fit within the category of documents for which the court has determined the crime-fraud exception applies. However, the attorney defendants' motion for an order authorizing them to disclose all documents and testify about their role in all aspects of the events which gave rise to this lawsuit adequately covers item 22, and any other request plaintiffs make for discovery from the attorney defendants.

Ethical Consideration 4–1 of the Model Code of Professional Responsibility ("Code"), which governs the conduct of all attorneys practicing law in New York State, sets forth the "ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client." N.Y.Judiciary Law EC 4–1 (McKinney 1992). Nonetheless, Disciplinary Rules 4–101(C)(2) and (4) of the Code authorize the attorney to reveal confidential communications "when permitted under Disciplinary Rules or required by law or court order," and when necessary "to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct." N.Y.Judiciary Law DR 4–101(C) (McKinney 1992). Courts have held that when an attorney is accused of wrongful conduct, whether or not the attorney is named as a formal party to the litigation, the attorney is permitted under DR 4–101(C)(4) to reveal confidential communications in an effort to clear his or her

84

name. *E.g., Eckhaus v. Alfa–Laval, Inc.,* 764 F.Supp. 34, 37–38 (S.D.N.Y.1991) (and cases cited therein); *SEC v. Forma,* 117 F.R.D. 516, 524 (S.D.N.Y.1987).

█ Plaintiffs' second amended complaint in the case at bar includes numerous allegations of wrongdoing by Bartlett, Pontiff in connection with securities fraud and other causes of action leveled against the Whalen defendants. While the court draws no conclusions as to the truthfulness of the allegations against the attorney defendants, the court finds the allegations to be objectively reasonable given the facts in the record at this time. *See SEC v. Forma,* 117 F.R.D. at 525. Hence, the attorney defendants certainly must be permitted to defend themselves, and in so doing must be permitted to reveal confidential communications between themselves and the Whalen defendants consistent with DR 4–101(C)(4). Therefore, the court grants the attorney defendants' motion for an order authorizing them to disclose documents and testify about their role in all aspects of the events which gave rise to this lawsuit. In view of this authorization, the attorney defendants are directed to respond to item 22 of plaintiffs' document production request, and any other outstanding discovery request.

### III. *Conclusion*

To summarize, plaintiffs' cross-motion pursuant to Fed.R.Civ.P. 37(a) to compel discovery is granted in part, and defendants Bartlett, Pontiff and Paul Pontiff are directed to respond forthwith to the items in plaintiffs' discovery requests enumerated in this decision. The motion by defendants Bartlett, Pontiff, Stewart, Rhodes & Judge, P.C. and Paul Pontiff for an order authorizing them to disclose documents and testify about their role in all aspects of the events which gave rise to this lawsuit is also granted, and defendants are directed to respond forthwith to all outstanding discovery requests.

It is So Ordered.